CLARK v. CLARK.

1. There was a devise "to my brother C., for and during his natural life, and on his death to his children, and then to their children living at his death, share and share alike." When the will was drawn, C. had two children, but one of them, S., died before testator, leaving issue; C. died after testator, his other child surviving him. *Held,* that at C.'s death, one-half of the property passed to the children of S.
2. This property having been sold under a decree in partition proceedings, to which the children of S. were not parties, the bidder was not bound to comply with his bid.
3. In the construction of a will, the main object should be to ascertain the testator's intention, which must be gathered from the will itself, assisted by the light of the circumstances surrounding the testator when the will was made.
4. The doctrine of lapse has no application to this devise.
5. Words supplied in a will, they being absolutely necessary to make the context sensible.

Before ALDRICH, J., Charleston, June, 1882.

The opinion states the case.

The Circuit decree was as follows:

I am so well satisfied with the opinion given by Judge Fraser, while at the bar, as to the proper construction of this will, that I have adopted it as the judgment of the court.

The will of Henry Clark devises to his brother, William Clark, a lot at the corner of Hasel and Anson streets, Charleston, "for and during his natural life, and on his death to his children, and then to their children living at his death." At the date of the will, William Clark had two children living, one of whom, Mrs. Sherwood, died before the testator, and the other, William J. Clark, was living at his death. At the death of William Clark, there were children of Mrs. Sherwood, and also of William J. Clark, living. Now, what is the proper construction of this will? Before the act of 1824, words of limitation were necessary to create by will a fee-simple estate; and the devise to the children of William Clark in this will would only

have given them a life-estate; and if there had not been, as in this case, a remainder over in fee, the estate would have returned to the heirs of the testator, or to his residuary devisee.

By the act of 1824, (re-enacted, *Gen. Stat., ch. LXXXVI.*, § 9,) no words of limitation in a will are necessary to create a gift in fee-simple " unless such construction shall be inconsistent with the will of the testator, expressed or implied." If, in this case, the will is held to give a fee-simple to William J. Clark, then his children can take nothing as purchasers under the will, but the whole estate goes in fee-simple to the father, William J. Clark. Now, this is manifestly inconsistent with the will of the testator, and, therefore, the will is to be construed so as to give William J. Clark what a common law construction before the statute could give to him, to wit, a life-estate. After his death, his children would take the fee, because there is no provision of the will inconsistent with it.

If this be the proper construction of the will as to the estate of William J. Clark, then Mrs. Sherwood's estate, if she had been named, was also a life-estate. *Lesly* v. *Collier*, 3 *Rich. Eq.* 128. But the remainders to the children of the children of William Clark are, by the terms of the will above quoted, contingent upon their being living at the death of William Clark. The devise, however, is not to Mrs. Sherwood by name, but is to be to the children of William Clark, and only to those who answer the description of children at the death of the testator. When a legacy is given to a class of persons in general terms, and one or more dies in the life-time of the testator, "those of the described class who survive the testator take the whole estate." 2 *Wms. Ex.* 877. It thus seems to us that William J. Clark took an estate for life in the lot in Charleston, with remainder in fee to his children living at the death of William Clark.

It is, therefore, ordered, adjudged and decreed, that Rudolph Hopke do accept the title tendered under the proceedings in this case, and do pay the costs so far as this question is concerned.

*Messrs. Simons & Cappelmann*, for appellant, cited 17 *S. C.* 45; 23 *Pa. Stat.* 388; 2 *Pow. Dev.* 6; 2 *Jarm. Wills* 181, 472; 1 *Metc. (Mass.)* 446, 480; 2 *Hill Ch.* 105; 6 *Monr. T. B.* 399;

November Term, 1882.

3 *Rich. Eq.* 138; 6 *Rep.* 17; 6 *Rich. Eq.* 88; 16 *S. C.* 220; 2 *Vern.* 611; 2 *P. Wms.* 103; 1 *Russ. & M.* 639; 2 *Myl. & K.* 69; 4 *Desaus.* 312; 7 *Paige* 336; 70 *N. Y.* 87; 3 *Kern.* 273; 23 *N. Y.* 366; 3 *Jarm. Wills* 632; 6 *Sim.* 329; 8 *Sim.* 354; 54 *Me.* 239; 4 *S. C.* 84.

*Messrs. A. T. Smythe* and *W. M. Bruns*, contra, cited some of the same authorities; and, also, 1 *Rich. Eq.* 32, 401; 9 *Id.* 470; 2 *Wms. Ex.* 1322; 1 *Strobh. Eq.* 283; 1 *Hill Ch.* 311, 355; 2 *Id.* 41, 431; 2 *McC. Ch.* 444; 1 *Jarm. Wills* 602; 3 *Id.* 700; *Bailey Eq.* 9, 302; *Spears Eq.* 319.

August 22d, 1883. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Henry Clark, of Charleston, in 1869, executed his will, by which, among other things, he devised as follows: " I devise to my brother William Clark, all that lot of land on the corner of Hasel and Anson streets, &c., for and during his natural life: and on his death to his children, and then to their children living at his death, share and share alike," &c. The testator died in October, 1871, and at that time there were living his brother William, the life-tenant, and his child, William J. Clark, who had children as follows: Eliza, wife of Louis Appelt; Samuel J. Clark, L. Inez Clark, William H. Clark, Henry D. Clark and Martha, wife of E. C. Horton, and the latter has since died, leaving an only son, Edward C. Horton. Martha A. Sherwood, another of the children of William, had died after the testator made his will, but before his death, leaving surviving her children, Ella A. Sherwood, Mary L. Sherwood, Cornelia L. Sherwood and Anne L. Sherwood (the latter since dead, without issue).

In January, 1875, William Clark, the life-tenant, died, leaving surviving him an only son, William J. Clark, and his children, and his grandchildren, the Sherwoods, as before stated; and William J. Clark, his only surviving child, instituted the principal case of *W. J. Clark* v. *W. H. Clark et al.*, for partition and division of the lot between himself and his children, without making the Sherwoods, children of his deceased sister, parties. There was a decree for the sale of the property, which

was offered for sale by Master W. D. Clancy, and bid off by one Rudolph Hopke for $2,500. The said purchaser now refuses to comply with his bid, on the ground that he had received notice that the children of Mrs. Sherwood were entitled to an interest in the property and should have been made parties, and, not having been, the master is unable to make good titles; and he has filed this petition *in re* to have that point decided. The question submitted was whether the Sherwoods, children of a daughter of William Clark, who died before the testator, and, of course, before her father, the life-tenant, were entitled to an interest in the property, so as to make it necessary that they should have been parties to the partition proceedings.

The case was heard by Judge Aldrich, who held that the Sherwoods, whose mother died before the testator, Henry Clark, took no interest under his will, and adjudged that the titles tendered were good, and should have been accepted by Hopke, whose petition was dismissed. From this decree the petitioner, Hopke, appeals to this court upon the grounds: "1. That the presiding judge erred in holding that under the will of Henry Clark, upon the death of William Clark, William J. Clark took a life-estate, and his children then living alone took the fee to the property in question, as this construction is clearly inconsistent with the intention and will of the testator. 2. That the presiding judge erred in holding that the purchaser, Rudolph Hopke, was bound to accept the title tendered."

What is the proper construction of the will of Henry Clark in respect to the rights of the children of Mrs. Sherwood? All the interest which William J. Clark and his children have under the will was covered by the decree of sale, and passed to the purchaser; so that it will be unnecessary to consider the rights of these parties as between themselves. The only matter which touches the alleged insufficiency of the title is the question whether the Sherwoods should have been before the court as parties having an interest in the property when the order for sale was made.

In the construction of a will, of course the main object should be to ascertain the intention of the testator; but that intention must be gathered from the will itself, assisted by the light of

the circumstances surrounding the testator at the time of its execution. At the time this will was written, William Clark had two children, Mrs. Martha A. Sherwood and William J. Clark, and it is reasonable to assume that the testator, Henry Clark, in giving the property to his brother William for life, with remainder over " to his children," intended as great a benefit to Mrs. Sherwood as to her brother William J. Clark. Indeed, if the will had disposed only of personalty, and had been made by William Clark, the father, instead of Henry Clark, the uncle, the law would have intervened in behalf of the children of Mrs. Sherwood, (*Gen. Stat.*, § 1865,) notwithstanding she died in the life-time of the testator. But, as the will disposed of land, and was not made by the father, the terms of that law do not cover the case. The intention, which is so manifest, must, however, be carried into effect, unless, in the events which have occurred, there is some controlling principle of law which interdicts it.

In the first place, we do not consider the doctrine of lapse as involved in the case. The testator disposed of his whole interest to certain persons in a particular manner, viz.: to his brother William for life, with first remainder to William's children as a class for life, and with a second remainder to their children. Both the children of William have children now living, and the fact that one of them (Mrs. Sherwood) died in the life-time of the testator, cannot reach to and cause to lapse the ulterior limitation to her children. " However much it may have been once doubted, it is now clearly settled, that when an interest in property is given by will to one person with a limitation over of the same interest, either to his children or to any other persons upon the death of the first devisee or legatee before the time appointed for such interest to vest in possession, the death of the first devisee or legatee, although in the life-time of the testator, does not produce a lapse of the limitation over of that interest to the substituted object of the testator's bounty," &c. *Mowatt* v. *Carow,* 7 *Paige* 328 ; *Johnson* v. *Harrelson,* 6 *S. C.* 340. There is nothing decided in the case of *Lesly* v. *Collier,* 3 *Rich. Eq.* 129, inconsistent with this doctrine.

Again, if, as contended, there is no good limitation over of the

half of the lot intended for Mrs. Sherwood, then another rule of construction intervenes. In that case, the share intended for Mrs. Sherwood, being given to her as one of a class—"children of William"—would pass to her brother, William J. Clark, as the only surviving member of the class, to which the property was given, so that in either view the doctrine of lapse does not touch the case. The whole interest was effectually given, and the only question is, whether the share intended for Mrs. Sherwood, (according to the event, one-half interest,) who died leaving children before the testator, Henry Clark, shall go to the chil₋ dren of her brother, William J., or to her own children. "A gift to a class implies an intention to benefit those who constitute the class and to exclude all others; but a gift to individuals, described by their several names and descriptions, though they may together constitute a class, implies an intent to benefit the individuals named. In a gift to a class you look at the description and inquire what individuals answer to it, and those who do answer to it are the legatees described. * * * If a testator gives a legacy to be divided among the children of A., at a particular time, those who constitute the class at the time will take." *Deveaux* v. *Deveaux*, 1 *Strobh. Eq.* 283 ; *Cole* v. *Creyon*, 1 *Hill Ch.* 311 ; *Swinton* v. *Legare*, 2 *McC. Ch.* 444.

Does the will create a good limitation over of the share of Mrs. Sherwood to her children by way of executory devise or otherwise? For the sake of clearness, the clause under construction may be divided into three parts : First, a life-estate was clearly given to William, the brother, and to this we will not have occasion again to refer. Second, "and on his death to his children." If this were all of it, and no other words had been added, there would be no serious difficulty. Mrs. Sherwood having died before the testator, the whole interest, upon the death of William, would have gone to William J. in fee, according to the authorities above cited, as to the survivor of a class. William J. would have been the only person living at the time fixed for distribution answering the description of "children." There are, however, other significant words in the clause which we think indicate and express a different intention. Third, "and then to their children living at his death, share and

share alike." This sentence is very condensed, and in consequence is somewhat obscure, but it seems to us that there is no great difficulty in ascertaining with reasonable certainty the intention of the testator.

It must be kept in mind that he was mounting a second limitation over upon the second life-estate to the children of William, who were more than one when he wrote the will, and, therefore, he used the pronoun in the plural number—"their children." And "then," that is, after the termination of this second life-estate respectively to Mrs. Sherwood and William J. Clark, to "their children." Whose children? Most manifestly the children of both of them, who were alive when the will was written, and for whom the provision was made, that is to say, the share of each child of William to his or her children. Putting ourselves in the place of the testator, it will appear that he could not have foreseen that Mrs. Sherwood would die before him, and it is, therefore, impossible that he could have used expressions only applicable to the event which has happened. To suppose that in writing his will he had reference alone to the children of William J. Clark in using the words "their children," would be to ascribe to him the gift of prescience, which cannot be accepted. So, too, as to the words "his death." They cannot refer to the death of William Clark, for that would fix the termination of the second life-estate upon the same event as that of the first, thus annihilating the very life-estate which he was in the act of constructing. The words "his death" follow the words "their children living at," and it is plain that to make sense it is absolutely necessary to supply or understand the words "or her"—"their children living at his (or her) death."

It seems clear to us that the testator had reference to the children of both Mrs. Sherwood and William J. Clark, and that the sentence properly understood should be read as follows: "and then to the children of each respectively, living at his or her death, share and share alike." This construction seems to be required by the terms used, and is the only one in harmony with the facts which are known to have existed at the time the will was written, and the manifest intention of the testator. As was said by Chief Justice Marshall, in *Finlay* v. *King's Lessee,*

3 *Pet.* 377 : " The intent of the testator is the cardinal rule in
the construction of wills, and if that intent can be clearly per-
ceived, and is not contrary to some positive rule of law, it must
prevail, although in giving effect to it some words should be
rejected or so restrained in their application as to change their
literal meaning in the particular instance." See *Duncan* v.
*Harper,* 4 *S. C.* 76.

Thus interpreted, the doctrine of gifts to a class does not
apply, and the case becomes the simple one of a testator (leaving
out the first life-estate to William) devising to his nephew and
niece, under the designation of " the children of William," a
life-estate to each in a house and lot, with limitation over to
their children respectively, living at his or her death, which was,
in effect, giving one-half to Martha A. Sherwood during her life,
and then to her children living at her death. The niece died
before the testator, never having been vested with any interest
in the property, but she left children, who, after her death, had
an interest, and were entitled to the share intended for the
mother, not from or through her, but as purchasers by substitu-
tion, as a substantive and original devise to them under the will
of Henry Clark, the testator.

" Whether the remainder is vested or contingent, if the event
has happened on the occurrence of which it is to take effect,
and there are those alive at the death of the testator who, by
the words of the bequest, can be held to be the objects of the
testator's bounty in substitution of the prior legatee, who may
have died in his life-time, they take the share of such lega-
tee. The intention must be express, or satisfactorily implied
from the language employed by the testator. When the gift
is absolute, and the object of it dies in the life-time of the
testator, it must, necessarily, fall into the residue of his
estate, for there would be no one to claim it by substitu-
tion, though a limitation over." *Johnson* v. *Harrelson,* 6 *S. C.*
338 ; *Reeder* v. *Spearman,* 6 *Rich. Eq.* 92 ; *Mathis* v. *Ham-
mond, Id.* 124, and authorities there referred to. In the case last
cited, Chancellor Johnston states clearly the reason for the rule :
" Upon general principles, it would seem that where a testator
gives property in succession to two persons, there is evidence of

such a state of his affections as would warrant the inference of an intention on his part that the secondary object of his bounty would have induced a direct gift to him if the primary object had never existed or were out of the way.    The difference made between them exhibits a mere preference of the one over the other, but both are preferred over the heirs or distributees, otherwise there is no motive to make the will," &c.

The will of Henry Clark, in the state of facts which have occurred, gave to his niece, Mrs. Sherwood, one-half interest in the property in question, and if she had survived the time fixed for her right to be reduced to possession, it is difficult to doubt that such interest, at her death, would have gone to her children.    We cannot think that her death before that of the testator either transferred that interest to her brother, William J. Clark, as the survivor of a class to whom it was given for life, or lapsed it, so as to prejudice and destroy the limitations of that interest over to her children.    Upon the death of William Clark the children of Mrs. Sherwood (she having previously died) were entitled to take among them, as purchasers, the interest (one-half) originally intended for their mother for life, with limitation over to them as remaindermen under the will.

The judgment of this court is that the judgment of the Circuit Court be reversed; that the question submitted be decided in the affirmative; that the Sherwoods, children of a predeceased sister of William J. Clark, have an interest in the property described, under the will of Henry Clark, so that they must be parties to the proceedings for a sale of the same and participate in the proceeds; and that the petitioner, Hopke, is not bound to accept the titles tendered to him, the Sherwoods not having been parties to the proceedings.